**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JOHNELL DEMPSEY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 07-1042** |
| **BURL CAIN** | **SECTION "K"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).[1]

### I. Factual Background

The petitioner, Johnell Dempsey ("Dempsey"), is an inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On March 4, 2002, Dempsey was charged by bill of information in Orleans Parish with four counts of armed robbery.[3]

---

[1] Under Title 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 1.

[3] St. Rec. Vol. 4 of 4, Bill of Information, 3/4/02.

The record reflects that, around 11:00 a.m. on New Year's Day, January 1, 2002, Charles Shumate and his girlfriend, Berry Burnside, were walking on Royal Street toward Esplanade Avenue.[4] A man, later identified as Dempsey, aggressively approached them, put his arm around Shumate's shoulder, and declared, "I'm taking your money." The man wore all black clothing and a security badge. Shumate did not take the man seriously until he said, "I'm not f*cking around. I'm taking your money. I have a gun." Dempsey opened his jacket to reveal a gun. Burnside was walking ahead of the two men and Dempsey warned her to "keep walking."

Shumate gave Dempsey about thirteen dollars, which was all the money he had in his wallet. Burnside then said, "We'll give you all our money. Would you just leave us alone?" Dempsey told her to shut up and demanded her money. She handed him two dollars from her pocket. Dempsey looked at Shumate and said, "You didn't see me and you don't recognize me, do you?" Shumate answered negatively, and Dempsey turned and left. The couple walked to a nearby bakery and called the police to report the incident.

Elaine MacNeil of San Francisco, and her friend, Jennifer Fishetti of New York, were also in the French Quarter on New Year's Day of 2002. They were walking on Chartres Street near Dumaine Street shortly after noon when a man, later identified as Dempsey, approached then from around a corner. MacNeil initially thought he was a police officer because he was wearing dark clothes and a jacket with an insignia. As he neared, he pulled out a gun and pointed it at MacNeil, who was walking slightly ahead of Fishetti. MacNeil said, "No" in a very loud voice when she saw that a gun was pointed at her. Dempsey then demanded her money. Fishetti, who had caught up

---

[4]The facts of the case were taken from the opinion of the Louisiana Fourth Circuit Court of Appeal on direct appeal. *State v. Dempsey*, 844 So. 2d 1037, 1038-39 (La. Ct. App. 2003); St. Rec. Vol. 2 of 4, 4th Cir. Opinion, 2002-KA-1867, p. 1-3, 4/2/03.

with her friend and realized what was happening, handed him three hundred dollars. Dempsey "started jabbing the gun" at MacNeil while saying "[g]ive me your money now! Give me your money or I'm going to hurt you!" She then gave him about forty dollars. Dempsey told the women to "[j]ust walk, " which they did. Once safely away, they entered a nearby business and called 911 to report the incident.

While the police were taking information from the women, they received a call that a suspect had been apprehended nearby. Dempsey had been arrested inside of the Bourbon Pub, which is located at the intersection of St. Ann Street and Bourbon Street. The arrest occurred at about 12:25p.m. Dempsey matched the description that was broadcasted over the police radio. Additionally, an employee of the pub had informed the arresting officer that Dempsey was armed. After he was stopped, the police conducted an incidental search of his person which revealed a gun, two small swords, a pair of handcuffs, and $305.00 in currency.

MacNeil and Fishetti were transported to Bourbon Street, where the suspect, Dempsey, was presented to them. Both women identified Dempsey as the man who robbed them at gunpoint. After he was identified, Dempsey was transported to central lock where he was charged with the armed robbery offenses and where he also was identified by Shumate. During his booking, the police learned that Dempsey also had a 1997 felony conviction for issuing worthless checks in Jefferson Parish.

That same afternoon, Detective George Tessier took Shumate, the first victim, to the police station where he identified Dempsey as the man who had robbed him and Burnside at gunpoint. Burnside did not go to the police station. Instead, months later, Detective Tessier showed her a photo lineup, and she could not make an identification.

3

Dempsey was tried before a jury on June 25, 2002, and he was found guilty as charged on all four counts.[5] The State eventually filed a multiple bill charging Dempsey as a second felony offender.[6]

At a hearing held on July 2, 2002, the Trial Court denied Dempsey's motions for new trial and for post-verdict judgment of acquittal.[7] The Trial Court also determined that Dempsey was a second felony offender.[8] After waiver of legal delays, the Trial Court sentenced Dempsey on count one as a multiple offender to serve 99 years in prison, without benefit of parole, probation or suspension of sentence, to run consecutively to any other sentence.[9] The court went on to sentence Dempsey on each of the remaining three counts also to serve consecutive sentences of 99 years in prison, without benefit of parole, probation, or suspension of sentence. The Court denied Dempsey's motion to reconsider the sentences.[10]

On direct appeal, Dempsey's counsel argued that the four consecutive maximum sentences of 99 years were not justified in this case.[11] The Louisiana Fourth Circuit Court of Appeal affirmed the conviction and sentences on April 2, 2003, finding no merit to the claim.[12]

---

[5]St. Rec. Vol. 4 of 4, Trial Minutes (3 pages), 6/25/02; St. Rec. Vol. 2 of 4, Trial Transcript, 6/25/02.

[6]St. Rec. Vol. 4 of 4, Multiple Bill, 6/26/02; Multiple Bill, 7/2/02; Minute Entry, 6/26/02; Minute Entry, 7/2/02.

[7]St. Rec. Vol. 4 of 4, Minute Entry, 7/2/02; St. Rec. Vol. 2 of 4, Motion for New Trial, 7/2/02; Motion for Post-Verdict Judgment of Acquittal, 7/2/02; Sentencing Transcript, 7/2/02.

[8]St. Rec. Vol. 4 of 4, Minute Entry, 7/2/02.

[9]*Id*.

[10]*Id*.; St. Rec. Vol. 2 of 4, Motion to Reconsider Sentence, 7/2/02.

[11]St. Rec. Vol. 2 of 4, Appeal Brief, 2002-KA-1867, 10/22/02; 4th Cir. Opinion, 2002-KA-1867, 4/2/03.

[12]*Dempsey*, 844 So. 2d at 1041; St. Rec. Vol. 2 of 4, 4th Cir. Opinion, 2002-KA-1867, p. 6, 4/2/03.

4

Dempsey did not timely seek further review of this ruling.[13] His conviction therefore became final 30 days later, on May 2, 2003. *Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008) ("a conviction becomes final when the time for seeking further direct review in the state court expires.") (quoting *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003)).

## II. Procedural History

Six weeks later, on June 20, 2003, Dempsey submitted a writ application, which was filed by the Louisiana Supreme Court on July 8, 2003.[14] The Court denied the application for seeking inappropriate post-conviction relief, citing La. Code Crim. P. art. 930.3 and *State ex rel. Melinie v. State*, 665 So. 2d 1172 (La. 1996).[15] Dempsey sought reconsideration of that order which the Court denied on October 15, 2004.[16]

On July 7, 2005, Dempsey submitted a writ application to the Louisiana Fourth Circuit in which he sought an order directing the Trial Court to rule on his application for post-conviction relief.[17] Dempsey argued that he mailed the application to the Trial Court on July 26, 2004, and did not receive a ruling. He attached a prison mail request dated July 26, 2004, which he claimed

---

[13]La. S.Ct. R. X§5(a) provides that an application seeking review of the judgment of the court of appeal shall be filed or postmarked within 30 days of the issuance of the judgment.

[14]St. Rec. Vol. 3 of 4, La. S. Ct. Writ Application, 03-KH-1917, 7/8/03 (postmarked 6/20/03, signed "__ day of June, 2003"); St. Rec. Vol. 2 of 4, La. S. Ct. Letter, 2003-KH-1917, 7/8/03 (postmarked 6/20/03).

[15]*State ex rel. Dempsey v. State*, 876 So. 2d 823 (La. 2004); St. Rec. Vol. 3 of 4, La. S. Ct. Order, 2003-KH-1917, 6/25/04. La. Code Crim. P. art. 930.3 sets forth the grounds on which post-conviction relief can be granted. In *State ex rel. Melinie*, the Louisiana Supreme Court, relying on La. Code Crim. P. art. 930.3, ruled that claims of excessive sentence or errors in sentencing which should be raised on direct appeal were not proper grounds for post-conviction relief.

[16]*State ex rel. Dempsey v. State*, 883 So. 2d 1053 (La. 2004); St. Rec. Vol. 3 of 4, La. S. Ct. Order, 2003-KH-1917, 10/15/04; Application for Reconsideration, 03-KH-1917, 8/16/04.

[17]St. Rec. Vol. 1 of 4, 4th Cir. Writ Application, 2005-K-1152, 7/19/05 (signed 7/7/05).

proved that he mailed the application on that date.[18] He also attached two other prison mail requests dated February 7, 2005, and June 17, 2005, which he apparently offered to establish efforts to contact the Trial Court about the application.[19] Nothing in the Trial Court record presently before this Court corresponds with these dates.

Dempsey attached to his writ application a copy of the alleged application for post-conviction relief in which he raised five grounds for relief:[20] (1) the evidence at trial failed to exclude every reasonable hypothesis of innocence; (2) ineffective assistance of counsel for failure to conduct a pretrial investigation or subpoena an alibi witness; (3) denial of due process as a result of the admission into evidence of the out of court and in-court identifications; (4) denial of due process and the right to counsel during the out of court identification by Burnside; and (5) the prosecution knowingly allowed MacNeil's perjured testimony to go uncontested. On January 13, 2006, the Louisiana Fourth Circuit denied Dempsey's writ application indicating that the court reviewed the claims and found no basis to grant relief.[21]

Several days later, on January 24, 2006, Dempsey filed another writ application with the Louisiana Fourth Circuit seeking a mandamus order for the Trial Court to rule on his application for post-conviction relief allegedly mailed to them on July 27, 2004, from the prison.[22] The Court

---

[18]St. Rec. Vol. 1 of 4, Inmate Withdrawal Request, 7/26/05.

[19]St. Rec. Vol. 1 of 4, Inmate's Request for Legal/Indigent Mail, 2/7/05; Inmate's Request for Legal/Indigent Mail, 6/17/05.

[20]St. Rec. Vol. 1 of 4, Uniform Application for Post-Conviction Relief.

[21]St. Rec. Vol. 1 of 4, 4th Cir. Order, 2005-K-1152, 1/13/06.

[22]St. Rec. Vol. 1 of 4, 4th Cir. Writ Application, 2006-K-0080, 1/24/06 (signed "__ day of January, 2006").

denied the application on March 6, 2006, as repetitive citing La. Code Crim. P. art. 930.4 because the claims were addressed in the prior writ application, 2005-K-1152.[23]

In the meantime, on February 10, 2006, Dempsey submitted a writ application to the Louisiana Supreme Court challenging the appellate court's January 13, 2004, ruling.[24] The Court denied the application without reasons on December 15, 2006.[25]

### III. Federal Petition

On February 16, 2007, the Clerk of Court filed Dempsey's petition for federal habeas corpus relief, in which he raised eight grounds for relief:[26] (1) the evidence at trial failed to exclude every reasonable hypothesis of innocence, (2) ineffective assistance of counsel for failure to conduct a pretrial investigation or subpoena an alibi witness and because the indigent defender board is paid in an unethical manner that creates conflicts of interest, (3) denial of due process as a result of the admission into evidence of the out of court and in-court identifications, (4) denial of due process and the right to counsel during the out of court identification by Burnside, (5) the prosecution knowingly allowed MacNeil's perjured testimony to go uncontested, (6) denial of the right to trial by jury where the trial court sentenced him using factors not found by a jury beyond a reasonable doubt, (7) petitioner's double jeopardy rights were violated as a result of receiving consecutive sentences after

---

[23]St. Rec. Vol. 1 of 4, 4th Cir. Order, 2006-K-0080, 3/6/06. La. Code Crim. P. art. 930.4 provides for the dismissal of a post conviction application if it: (A) raises claims fully litigated on appeal; (B) raises a claim which should have been raised pretrial or during trial; (C) raises a claim which should have been raised on appeal; (D) the application is a successive application which raises claims which are not new or different; or (E) the application is a successive application which raises new or different claims which should have been raised in a previous application.

[24]St. Rec. Vol. 3 of 4, La. S. Ct. Writ Application, 06-KH-1180, 5/19/06 (postmarked 2/13/06, signed 2/10/06); La. S. Ct. Letter, 2006-KH-1180, 5/19/06 (postmarked 2/13/06).

[25]*State ex rel. Dempsey v. State*, 944 So. 2d 1280 (La. 2006); St. Rec. Vol. 3 of 4, La. S. Ct. Order, 2006-KH-1180, 12/15/06.

[26]Rec. Doc. Nos. 1, 22, 26.

only one trial, and (8) petitioner's due process rights were violated because the State convicted him on a crime for which he was never booked or charged.

The State filed a response in opposition to Dempsey's petition arguing that the federal petition was untimely filed.[27] Dempsey filed three replies to the State's opposition response insisting that his petition was timely filed when the prison mailbox rule is properly applied to his state writ applications.[28]

## IV.    Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[29] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on February 2, 2007.[30] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies

---

[27]Rec. Doc. No. 8.

[28]Rec. Doc. Nos. 12, 13, 23, 26.

[29]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[30]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Dempsey's petition on February 16, 2007, when the filing fee was paid. Dempsey's signature on the memorandum in support of the petition is dated February 2, 2007. This is the earliest date on which he could have been submitted the pleadings to prison officials for mailing. The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c) (2006)).

In this case, the State argues that Dempsey's petition was not timely filed. The Court's review of the record also demonstrates that Dempsey failed to exhaust state court remedies with regard to his sixth, seventh, and eighth claims; and his supplemental argument regarding the unethical salary of the indigent defender board.[31] Nevertheless, the Court finds that the limitations defense raised by the respondent is dispositive of Dempsey's petition for the reasons set forth below.

## V. Statute of Limitations

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[32] *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001). Dempsey boldly

---

[31]"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *Nobles*, 127 F.3d at 419. The Court can also raise exhaustion *sua sponte*. *McGee v. Estelle*, 722 F.2d 1206, 1214 (5th Cir. 1984) (*en banc*); *see also*, 28 U.S.C. § 2254(b)(3) (2006). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A) (2006); *Rose*, 455 U.S. at 519-20). A review of the record reflects that Dempsey failed to raise the listed claims to any state court before raising the claims to this federal court.

[32]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
A.     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
B.     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
C.     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
D.     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any

represents in his replies to the State's limitations defense that his federal filing period should begin from another trigger, the recognition of a new rule of constitutional law. Dempsey has failed to identify any such law in his pleadings and a review of his claims does not reveal that any are based on a new rule of constitutional law made retroactive on collateral review by the United States Supreme Court. *See* 28 U.S.C. § 2244(1)(C) (2006).

Dempsey's conviction is deemed final on May 2, 2003, which was 30 days after the Louisiana Fourth Circuit affirmed his conviction and he did not seek timely review to the Louisiana Supreme Court. Dempsey argues that his writ application to the Louisiana Supreme Court should be considered timely because he did not obtain a copy of the Louisiana Fourth Circuit's ruling until June 12, 2003, and he submitted his writ application to the Louisiana Supreme Court on June 20, 2003.

The record reflects that the Louisiana Fourth Circuit's opinion was issued and mailed to the parties on April 2, 2003.[33] Under La. Code Crim. P. art. 922 and La. S. Ct. Rule X§5, the mailing of the opinion sets the start of the time for seeking further review. Any subsequent copy obtained by Dempsey does not restart the finality determination. *Jasmine v. Hubert*, No. 06-512, 2008 WL 199867, at *4 (E.D. La. Jan. 22, 2008) (Berrigan, J.) (citing *Williams*, 217 F.3d at 308); *see also*, *Bryant v. Louisiana*, No. 06-0088, 2007 WL 2323383, at *5-7 (E.D. La. Aug. 9, 2007) (Duval, J.) (time period under La. S. Ct. Rule X§5 begins from issuance of notice of the appellate court's judgment not upon receipt of the notice).

---

period of limitation under this subsection.

28 U.S.C. § 2244(d) (2006).

[33]St. Rec. Vol. 2 of 4, 4th Cir. Mail Certificate, 4/2/03.

Under the plain language of § 2244, Dempsey had until May 2, 2004, to file a timely federal application for habeas corpus relief and he failed to do so. Thus, literal application of the statute would bar Dempsey's § 2254 petition as of that date unless he is entitled to tolling as provided for by the AEDPA.

Section 2244(d)(2) provides that the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2) (2006). In order for a State post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Williams v. Cain*, 217 F.3d 303, 306-07 n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999). For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.'") (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999), *aff'd*, 531 U.S. 4 (2000)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition.

*Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir. 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 686-88 (5th Cir. 2005).

In this case, Dempsey's AEDPA filing period began to run on May 3, 2003, the day after his conviction was final. The filing period ran for 365 days, until Sunday, May 2, 2004, or the next business day, May 3, 2004, when it expired. Dempsey had no other properly filed state post-conviction or other collateral review pending during that time period.

The Court recognizes that Dempsey signed and mailed a writ application to the Louisiana Supreme Court during that time period on June 20, 2003. However, that writ application was submitted more than 30 days after the decision by the Louisiana Fourth Circuit. As noted previously, La. S.Ct. R. X§5 provides that an application seeking review of a judgment by the court of appeal shall be filed or postmarked within 30 days of the issuance of the appellate court's judgment. A writ application which fails to comply with La. S. Ct. Rule X§5 is not "properly filed" because it is untimely, and it is not pending as post-conviction review for purposes of the AEDPA's statute of limitations and tolling doctrines. *Butler v. Cain*, 533 F.3d 314, 318-19 (5th Cir. 2008). Relying on this rule and the mailbox rule discussed previously, Dempsey's submission and mailing

date, June 20, 2003, was well over 30 days after the Louisiana Fourth Circuit's opinion was issued on April 2, 2003.

As further discussed above in determining the finality of his conviction, the Louisiana Fourth Circuit's opinion was issued and mailed to the parties on April 2, 2003.[34] Under La. Code Crim. P. art. 922 and La. S. Ct. Rule X§5, the date notice is issued sets the start of the time for seeking further review. A request for additional notice of the court's ruling cannot re-start the time for review under La. S. Ct. Rule X§5. *Jasmine*, 2008 WL 199867, at \*4; *Bryant*, 2007 WL 2323383, at \*5-7. For these reasons, Dempsey's 2003 Louisiana Supreme Court writ application did not provide Dempsey with any tolling benefit.

The post-AEDPA jurisprudence also provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus. *Pace*, 544 U.S. at 418; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). Equitable tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. *Pace*, 544 U.S. at 418-19; *Cousin*, 310 F.3d at 848. The petitioner has not provided, and the record does not demonstrate, any basis for extending the extraordinary remedy of equitable tolling.

Dempsey's federal petition is deemed filed on February 2, 2007, which is over two and one-half years after the AEDPA filing period expired on May 3, 2004. His federal petition must be dismissed as untimely filed.

---

[34]St. Rec. Vol. 2 of 4, 4th Cir. Mail Certificate, 4/2/03.

**VI.    Recommendation**

For the foregoing reasons, it is **RECOMMENDED** that Johnell Dempsey's petition for issuance of a Writ of Habeas Corpus filed pursuant to Title 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 28th day of September, 2009.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**